

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-152-CR

TRACY DENISE ROBERSON                                              APPELLANT

V.

THE STATE OF TEXAS                                                     STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Tracy Denise Roberson of manslaughter and assessed her punishment at five years' confinement. The trial court sentenced her accordingly. Appellant brings five points, arguing that the evidence is both legally and factually insufficient to support her conviction and challenging certain evidentiary rulings of the trial court. Because we hold that the evidence is both legally and factually sufficient to support Appellant's conviction and that the trial court did not

------------

[1] *See* Tex. R. App. P. 47.4.

abuse its discretion by admitting the challenged evidence, we affirm the trial court's judgment.

**Facts**

Appellant was involved in a sexual relationship with Devin LaSalle. Appellant's husband, Darrell Roberson, shot and killed LaSalle sometime after midnight in the early morning hours of December 11, 2006, either before, when, or after Appellant yelled to Darrell that she was being raped. Those are the only facts that are clear and unequivocal. The remainder of the record is conflicting and contradictory.

It is unclear whether Darrell was aware of his wife's infidelity at the time he shot LaSalle. Darrell told detectives that he had driven to Oak Cliff in Dallas County for a card game. He said that Appellant called him a little after midnight to tell him that the house phone had been off the hook and that she was planning to take a bath. The State argues that this was Appellant's attempt to buy herself "some intimate time in the car" with LaSalle so that she could later claim to Darrell that the phone had been off the hook if Darrell called and got no answer.

Darrell nevertheless tried to call Appellant around 1:30 a.m. on the house phone and got no answer because she was outside in LaSalle's vehicle. Darrell then repeatedly called the house phone, his daughters' cell phones, and Appellant's cell phone for the next half hour between 1:38 a.m. and 2:12 a.m. He told police that he became more and more concerned when he could not reach anyone. Finally, he

2

managed to reach his seven-year-old daughter, J.R., at 2:12 a.m. She told Darrell that she could not find her mother in the home. Darrell told J.R. to make sure that the front door was locked and started driving toward home. He continued to talk to J.R. on the telephone as he drove. As Darrell drove up to his home, he saw LaSalle's truck parked in front of the house.

In Darrell's videotaped interview, he admitted that his first suspicion as he drove up and saw LaSalle's truck was that Appellant was with another man. Darrell told Detective Dishko that he did not see the man in the truck when he drove up, but during the 911 telephone call reporting the shooting, Darrell was overheard telling Appellant that he had seen LaSalle kissing her breasts.

In her interview, Appellant indicated that she saw Darrell get out of his vehicle with a gun in his hand. She told investigators,

> So when the car just stopped, the one that's in front of us, I see it's Darrell, so I start screaming, "Darrell, Darrell, Darrell, he's trying to rape me, he's trying to rape me, he's trying to rape me." But by then, Darrell is out of the Expedition, he has a gun, he's telling the person to stop.

After further questioning, Appellant changed her story slightly regarding whether Darrell was armed when he got out of his truck.

Detective Dishko testified that Appellant told him that Darrell had a "very, very, very violent temper." Detective Dishko testified that Appellant told him that when she and LaSalle saw Darrell, LaSalle said "Oh, shit," and immediately shifted into reverse gear, backing up the truck at a high rate of speed, laying rubber. Detective Dishko

3

stated that Darrell's shoes, pants, and shirt all had rubber on them, which indicated that "at some point in time he was in the vehicle's path [while] the tires were spinning, [and] the rubber was flying on him." Appellant told Detective Dishko that she moved down onto the floorboard before the shot. Appellant also told investigators that Darrell had yelled at her to get out of LaSalle's truck and accused her of cheating on him when she got out of the truck after Darrell had shot LaSalle.

Both Appellant and Darrell agreed that Appellant began to scream rape while she was still in LaSalle's truck. The two also appeared to agree that Darrell did not begin firing at the truck until after he heard Appellant yell that LaSalle was raping her. During her interview, however, the officers pointed out to Appellant that she was in the line of Darrell's fire and in danger of being shot.

And Appellant stated in another interview that she believed Darrell shot at the truck not because she was being raped but because he was angry. Further, while Darrell told investigators that he fired in response to Appellant's cries of rape, Detective Dishko testified that it did not appear from the 911 recording that Darrell believed that LaSalle was attempting to rape Appellant, and Detective Dishko also testified that he believed that Darrell was a jealous man.

Barry Dickey, a forensic analyst, testified that two conversations were occurring during the 911 call reporting the shooting. He testified that Appellant and Darrell did not appear to be collaborating or colluding with one another during the call, but rather they appeared to be arguing during the first five minutes of the call.

4

**Legal and Factual Sufficiency of the Evidence**

In her first point, Appellant contends that the evidence is legally insufficient to sustain her conviction. In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2] Appellant was charged by indictment with

> recklessly caus[ing] the death of Devin LaSalle by causing Darrell Roberson to shoot Devin LaSalle by falsely accusing Devin LaSalle of attempting to rape her. The Defendant's false accusation was reckless because it was made at a time when she knew that Darrell Roberson was armed with a firearm and Darrell Roberson, upon hearing the Defendant's false accusation, did cause the death of Devin LaSalle by shooting him with a deadly weapon, to wit: a firearm[,]

and, in paragraph two, with criminally negligent homicide under the same circumstances. The jury convicted Appellant of manslaughter by recklessly causing LaSalle's death.

While this is an unusual approach to a manslaughter accusation, it is supported by the law. A person commits the offense of manslaughter if he recklessly causes the death of an individual.[3] The penal code provides that

> [a] person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware

---

[2] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

[3] Tex. Penal Code Ann. § 19.04 (Vernon 2003).

5

of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.[4]

The issue of causation is addressed in section 6.04 of the penal code:

(a) A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

(b) A person is nevertheless criminally responsible for causing a result if the only difference between what actually occurred and what he desired, contemplated, or risked is that:

(1) a different offense was committed; or

(2) a different person or property was injured, harmed, or otherwise affected.[5]

The jury was presented with a swearing match. Either Darrell shot and killed LaSalle because he was angry over the adulterous relationship between his wife and LaSalle, or he shot and killed LaSalle in response to Appellant's cries of rape; that is, he acted in defense of a third person. The jury chose to believe that Darrell shot and killed LaSalle in response to Appellant's shouts of rape. The jury also chose to believe that Appellant knew that Darrell had a hot temper and saw or knew that Darrell was armed when she created the unjustifiable risk that he would shoot

---

[4] ... *Id.* § 6.03(c).

[5] ... *Id.* § 6.04.

LaSalle. Applying the appropriate standard of review, we hold that the evidence is legally sufficient to support Appellant's conviction and overrule her first point.

In her second point, Appellant contends that the evidence is factually insufficient to sustain her conviction. When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.[6] We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust.[7] To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict.[8]

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."[9] Evidence is always factually sufficient when it preponderates in favor of the conviction.[10]

---

[6] ... *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).

[7] ... *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417.

[8] ... *Watson*, 204 S.W.3d at 417.

[9] ... *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246.

[10] ... *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

7

Applying the appropriate standard of review for factual sufficiency, we hold that the evidence is not so weak that the verdict is clearly wrong and manifestly unjust, nor does the conflicting evidence so greatly outweigh the evidence supporting the conviction that the verdict is manifestly unjust.[11] We therefore overrule Appellant's second point.

**Admissibility of the Text Message**

In her third point, Appellant argues that the trial court abused its discretion by admitting State's Exhibit 57, a text message purportedly sent by Appellant to LaSalle. The message, in part, is "Yes, please . . . ONLY ONE REQUEST, cum on my back and let it flow into my butt! PLEASE!"

Below, Appellant objected under rule 403[12] that the exhibit was not relevant and was offered strictly for its prejudicial value and that the prejudicial value would clearly outweigh the probative value. The trial court overruled the objection. Appellant later objected based on rule 403 "that [she] previously ma[de]." The trial court also overruled that objection. Appellant reiterates these complaints on appeal. She also argues that the trial court failed to perform the required balancing test to determine whether the probative value outweighed the prejudice as required by rule 403 and *Montgomery v. State*.[13]

---

[11] *See Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417.

[12] *See* Tex. R. Evid. 403.

[13] 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh'g).

Appellant also raises a rule 404 complaint on appeal; however, our review of the record does not reveal any objection below to State's Exhibit 57 based on rule 404. That complaint was therefore not preserved.[14]

Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."[15] Evidence is unfairly prejudicial when it unduly suggests that the factfinder reach a decision on an improper basis, often emotional.[16] If a trial court determines that evidence is relevant and a timely, proper rule 403 objection is made, then the trial court must perform a balancing test under rule 403.[17] The trial court is not required, however, to perform the balancing test on the record; when the record is silent, we presume that the trial court preformed the appropriate balancing test.[18] In fact, article 38.05 of the Texas Code of Criminal Procedure states that "[i]n ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but

---

[14] *See* Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

[15] Tex. R. Evid. 403.

[16] *Montgomery*, 810 S.W.2d at 389.

[17] *Id.* at 388–89.

[18] *Williams v. State*, 958 S.W.2d 186, 195–96 (Tex. Crim. App. 1997).

shall simply decide whether or not it is admissible."[19]  In performing the balancing

test, the trial court

> must balance (1) the inherent probative force of the proffered item of
> evidence along with (2) the proponent's need for that evidence against
> (3) any tendency of the evidence to suggest decision on an improper
> basis, (4) any tendency of the evidence to confuse or distract the jury
> from the main issues, (5) any tendency of the evidence to be given
> undue weight by a jury that has not been equipped to evaluate the
> probative force of the evidence, and (6) the likelihood that presentation
> of the evidence will consume an inordinate amount of time or merely
> repeat evidence already admitted.[20]

We review a trial court's decision under rule 403 for an abuse of discretion.[21]

That decision will be upheld if correct on any theory of law applicable to the case,

even if the trial court's underlying reason for the decision is wrong.[22]

The State argued below that State's Exhibit 57 is admissible as proof of the

nature of Appellant's relationship with LaSalle and to show "just how reckless

[Appellant] was in [fabricating the rape allegation]."  The State also argued below

that the text message was necessary to its case because Appellant never admitted

her sexual relationship with LaSalle in either of her statements to the police.  The

State reiterates those arguments on appeal and also contends that State's Exhibit

---

[19] Tex. Code Crim. Proc. Ann. art. 38.05 (Vernon 1979).

[20] *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

[21] *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003).

[22] *Romero v. State*, 800 S.W.2d 539, 543–44 (Tex. Crim. App. 1990).

57 helped the jury to understand the recklessness of Appellant's rape claim in light of her relationship with LaSalle.

Appellant specifically argues that not only was State's Exhibit 57 unfairly prejudicial, it confused the issues and was unnecessarily cumulative. She also argues that there is no proof that she actually sent the message. Although the State concedes that the trial court admitted several other text messages that Appellant had sent to LaSalle, as well as photographs that Appellant had sent to LaSalle's phone of her in her underwear, the State argues that State's Exhibit 57 was the only direct communication from Appellant to LaSalle that tended to establish that the two were in a consensual sexual relationship. The State argues that the text message "made Appellant's complete callousness for the victim as evidenced through her rape allegation against him crystal clear."

In light of the record before this court, we cannot say the trial court abused its discretion in determining that the State needed the jury to be aware of the challenged exhibit to defeat a possible defense claim that, although she had flirted suggestively with LaSalle, Appellant never suggested, intended, engaged in, or led LaSalle to believe that she wanted a physically sexual relationship with him. The trial court could have properly concluded that the State needed the message before the jury to establish the consensual sexual relationship between Appellant and LaSalle in order to show that her shouting rape was a reckless act that she should have realized would likely elicit a violent response from Darrell, whom she knew

11

carried a firearm, and not a true cry for help. Because we hold that the trial court did not abuse its discretion by admitting State's Exhibit 57, we overrule Appellant's third point.

**Admissibility of Darrell's Statement**

In her fourth and fifth points, Appellant argues that the trial court erred in admitting Darrell's statement, State's Exhibit 37A, in violation of her rights as guaranteed under the Sixth Amendment to the Constitution of the United States,[23] as interpreted by the United States Supreme Court in *Crawford v. Washington*,[24] and in violation of her rights as guaranteed under article I, section 10 of the Texas Constitution.[25] Darrell's statements were hearsay. Because the statements were offered without his being present for purposes of confrontation and cross-examination, their admission does not afford Appellant the confrontation rights guaranteed her under the federal and state constitutions.[26] When, however, other portions of an inadmissible statement are offered either without objection or by the defendant, the remainder of the statement may be admissible.[27]

---

[23]... U.S. Const. amend. VI.

[24]... 541 U.S. 36, 124 S. Ct. 1354 (2004).

[25]... Tex. Const. art. I, § 10.

[26]... *See* U.S. Const. amend. VI; Tex. Const. art. I, § 10; *Crawford*, 541 U.S. at 53–54, 124 S. Ct. at 1365.

[27]... *Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex. Crim. App. 1999), *cert. denied*, 528 U.S. 1082 (2000); *Etheridge v. State*, 903 S.W.2d 1, 13 (Tex. Crim. App.

12

Appellant questioned Detective Dishko about the contents of Darrell's statement during her cross-examination of the detective. Afterward, the trial court admitted Darrell's statement in its entirety under rule 107 of the Texas Rules of Evidence, the rule of optional completeness, which provides,

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given. "Writing or recorded statement" includes depositions.[28]

Because Appellant presented a portion of Darrell's statement to the jury through Detective Dishko, the State was entitled to offer the remainder of his statement.

Additionally, the State argues that the evidence Appellant complains of was admitted elsewhere without objection through Appellant's own videotaped statement, which was published for the jury before Darrell's statement was admitted in its entirety.[29] Darrell's statement is essentially a factual recitation of his attempts to reach Appellant by telephone, his attempts to call his daughters, his arrival at home, and his shooting of LaSalle. The portion that is not a mere factual recitation

---

1994), *cert. denied*, 516 U.S. 920 (1995).

[28] ... Tex. R. Evid. 107.

[29] ... *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (A trial court's erroneous admission of "evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

13

describes Darrell's thought processes. When he first arrived home, he thought that a man had come to his home while he was gone and that his wife was in the car with him. It was not until she yelled that the man was trying to rape her that Darrell took his gun out of the console and got out of his Expedition with the gun. He said that he did not start shooting until LaSalle backed up and attempted to leave with Appellant in the truck and that he shot to protect her. At the same time, Darrell admitted that he thought that it was suspicious that Appellant was sitting in the passenger seat while LaSalle was leaning down below the dashboard and not visible to Darrell.

During Appellant's videotaped interview, she finally admitted that she had asked LaSalle to come over because she wanted to feel his "warm embrace." She was wearing only a robe and panties when she went outside with him to his truck. Although she claimed initially that they were merely friends, she finally admitted to a special relationship with LaSalle that involved emailed pictures of her in her underwear and sexual cartoons. She said that she was afraid of her husband because of his violent temper and stated that that was the reason she cried out that she was being raped when Darrell pulled up in his Expedition. She admitted that Darrell's first words to her when he got out of the Expedition were for her to "get [her] ass out of that car" and "I can't believe you're fucking off on me." During her interview, the officer also reminded Appellant that J.R. had told Darrell during their

14

telephone conversation that she heard a knock at the door and a man's voice, that Appellant had gone outside with the man, and that she was wearing her robe.

Appellant told the officers that when Darrell pulled up, his lights were on bright. She said that he immediately put the Expedition in park, jumped out, and yelled at her to "get [her] ass out of that car." In response to police questioning, Appellant admitted that she did not believe that Darrell was trying to rescue her from danger. But when the police suggested that Darrell was trying to shoot her, she said that he was shooting at anybody because he was angry.

Appellant admitted that Darrell checked all her telephone calls and text messages and that she had gotten a prepaid phone to talk to LaSalle. But she also said that she had thrown that phone away. She also insisted that LaSalle was different that night and that he did grab her and pull her outside when he came to her door. The police pointed out that J.R. denied hearing her scream. Appellant insisted that LaSalle was drinking that night and was not himsel6f.

She said that although she yelled that she was being raped, the windows of the truck were rolled up. She said that she screamed rape in the truck and after she was out of the truck. But she also stated that Darrell shot because he was angry and never believed the rape allegation. She also admitted that she had lied to the police about what happened because she was afraid of Darrell and afraid of what he would do to her if he found out that she was involved with LaSalle.

15

The police played the 911 tape for Appellant and showed her a transcription of it. It is apparent from the recording of the 911 tape that Darrell and Appellant were arguing about what she was doing in LaSalle's truck and that she was trying to convince Darrell that LaSalle was trying to rape her. Darrell admitted in his statement that when he was inside the house, sitting at the kitchen table, he decided that Appellant had been lying to him about the rape attempt.

Darrell's statement was admissible both under the rule of optional completeness and because the same evidence was admitted through Appellant's statements and the 911 recording. We therefore hold that the trial court did not abuse its discretion by admitting the remaining portions of Darrell's statement. We overrule Appellant's fourth and fifth points.

**Conclusion**

Having overruled Appellant's five points, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 5, 2010

16